Case number 25-1102, USA v. Jameel Tanzil. Oral argument, 15 minutes per side. Ms. Megan Sweeney Bean for the appellant. Good afternoon, your honors. May it please the court. Megan Bean for the United States. I would like to reserve three minutes of my time for rebuttal. This court should reverse the district court order suppressing evidence obtained pursuant to a search of Tanzil's cell phone under the federal search warrant for two independent reasons. First, the district court incorrectly substituted its own judgment for that of the federal magistrate judge who authorized the warrant when it found probable cause nexus lacking. And second, the district court wrongly found that agents could not have relied on the detailed 74 paragraph federal affidavit in good faith. Turning first to probable cause, applying the correct standard of review, there was more than a substantial basis for the federal magistrate judge to find that evidence of the target gun offenses would be on Tanzil's cell phone. And that's true under either- Do you agree that the phone itself was not used in connection with criminal activity? I do not agree with that, your honor. So if we picked one of these competing standards, you would prevail under either one? Yes. Even under the higher use standard that your honors- Can you articulate your argument under that standard? Under the higher standard? Sure. The affidavit established that under a totality of the circumstances, what we know is Tanzil is a convicted felon who cannot legally purchase guns at a store or from someone else, yet somehow he's obtaining guns almost at will. We have the agent's training and experience saying that people who are prohibited often communicate with others to obtain guns. But here we're not left with the agent's training and experience. We have a specific example of that. The affidavit explains that in early August of 23, Tanzil coordinates with his coworker to purchase four guns illegally while they're on a work break in the middle of the night. The men meet in a parking lot. The coworker tells this to police and then again to federal agents. He shows the guns to Tanzil. Tanzil takes photographs of the guns and then sends a photograph to a contact on Snapchat. The coworker gets cold feet. He doesn't sell Tanzil the guns. He goes back to work. And then sometime within the next day, those guns go missing from the car, and Tanzil's the only one who knows they're there. One of the target offenses is the possession of stolen firearms. There was probable cause for the magistrate judge to find that Tanzil stole those firearms. And the picture on the cell phone and the Snapchat communication, as well as coordination that almost certainly occurred with his coworker by cell phone, would be evidence of that offense. But we're not just... Using all those facts, we really just, based on all of that, you're really just talking about him taking a picture of a gun. If we're using a higher standard of what's the phone use in the criminal activity, right? Well, your honor, it's not just the picture. First of all, multiple photographs. It's also sending it to someone else on Snapchat. So that communication. And again, I think the district court also discounted the coordination that was necessary with his coworker to bring the guns to work, to meet in a gas station parking lot in the middle of the night. I think it was not unreasonable for the magistrate judge to determine that that would have happened by cell phone. But we're not just left with that instance of the firearms. We also have Tanzil's statement made to police at the time he was arrested in late October of 2023 in relation to murder of a young woman. And at the time of his arrest, police seized the same iPhone that this warrant authorizes the search of. And Tanzil, in a post-Miranda statement, told police that evidence on this specific iPhone will clear him of the murder. But he also admitted that he was at the murder scene the night that it happened. Now, agents were not, and neither was... The magistrate judge was not required to take Tanzil's word for it that he was innocent of the murder. And I think the district court missed that when it found that exculpatory evidence is not evidence of a crime. And so that doesn't help get into the cell phone. But the other parts that the district court missed is that Tanzil admitted he was at the scene. And we have that corroborated with eyewitness accounts that Tanzil was actually a shooter in the murder, that he arrived with someone else at the murder scene and left with someone else from the murder scene. And also one of the guns that the very specific nine millimeter firearm that a witness said Tanzil possessed was found in a home at the murder scene with Tanzil's child inside. So Tanzil gave law enforcement a direct tie to the cell phone that was searched by claiming that exculpatory evidence... That's still not showing that the phone was used in the criminal activity. I understand he was at the scene or acknowledged that he was at the scene and that the phone would show that would exonerate him. But I don't understand how that establishes, again, probable cause that he used the phone in criminal activity. Well, again, I think, Your Honor, we take the totality of what he said, which is that he's at the scene and that he is leaving the scene with someone else leaving his child in a house with the gun inside the house. And I think it was reasonable, which is that's the correct standard for the magistrate judge to believe that evidence related to the target gun offense of illegal gun possession. The target offense here wasn't murder for the federal warrant. It was gun possession. And certainly Tanzil's coming and going on that night and who he's communicating with, who he's leaving with, where he's hiding the gun. I think it was fair for the magistrate judge to assume that that evidence would be on his cell phone since he told police that there was evidence relevant to the murder on that phone. So he himself drew the tie to the cell phone. I think I understand your position, counsel, that under either of these standards that Judge Nalbandian identified you would win. I'm curious, in this case or more generally, does the government advocate for one standard over the other? Yes. The government believes that the correct standard is that there's a fair probability that the cell phone would contain evidence relevant to the investigation, not that the cell phone has to be used during the criminal conduct. I think the former standard, the evidence will be on the device, is more consistent with what the Supreme Court has said in Gates and what we have found in other contexts like... Gates, but we have Riley. The court has come out and said, these are cell phones these days, have a lot of private information, subject to a higher standard. Well, I think what Riley said is that you have to get a warrant to search the cell phone. But here, of course, there were two warrants that the law enforcement obtained, but there has to be a nexus to the cell phone. I'm not sure that the court has ever said that this is somehow higher than the standard required to get into a home. Right. I don't understand the court to have said that either. Has any other circuit weighed in on this? Yes. I think recently, the Second Circuit in Silva has said that the standard that the government is advocating for is the correct standard, and that's 146-4-183. I think they had the same debate prior to the Silva case, what was the correct standard, and that is where the Second Circuit came out. But even if this court were to disagree on probable cause, the court also incorrectly found that the good faith exception could not apply here. And in doing so, the court essentially, in about a sentence or two, said that because it did not believe the warrant established a nexus, that also the good faith exception shouldn't apply. And that was error. As this court has said repeatedly in cases like Sanders and others, there's daylight between the substantial basis probable cause standard and the good, the bare bones good faith standard. And while the probable cause standard itself is a low bar, the good faith standard is lower. In here, the affidavit drew more than a minimally sufficient nexus between evidence of the target offenses and Tanzil's phone. It outlined a very lengthy investigation by law enforcement. Tanzil even says the federal warrant had meat on its when it came to describing the criminal activity. And also, the affidavit drew a nexus between the cell phone and his criminal activities for the reasons that I've already described. Unless the court has further questions, I will cede my time and cede for rebuttal. Thank you. Okay. Thank you. You'll have your rebuttal. Good morning, Your Honors. Matt Monahan, Assistant Federal Defender on behalf of Mr. Tanzil. May it please the court. The Fourth Amendment requires a nexus between the suspected criminal activity and the place to be searched. The nexus must be factual, not speculative, and it must be based on inferences, not assumptions. At base, we're talking about a connection between what and where. Here, what the government wants is 90 days of content across every app on a cell phone. To give an analogy, it's like asking the government or it's like the government's asking to come into a home for 90 days straight and go through everything. And even then, given how much data is on a phone, you still wouldn't get from 90 days of home searches everything you could get from 90 days of digging into a phone. That's the problem. If I have a phone, I don't use it in the criminal activity at all, but I store all of my records on the phone and nowhere else. The government will never be able to get it. The government's going to have to put the case together the way they do in other areas when you're looking at storage. They need to find, as they dig into you, a confidential informant who could get access to your business or whatever crime we're talking about, how it is that crime's happening, and from there, get access based on building an investigation out the way the government is capable of doing. I think another possible answer to your question, Judge, is the type of crime is going to play a role in the inferences we can make about storage in that instance. If we're talking about a possessory firearms offense, I don't know how there's a great match between possessing the firearm and inferring that the data storage only done on the phone will match there, that you're going to get the nexus. But in other cases, I could see your argument, your point there holding that the government is looking at digital data. There's a lot of places digital data could be in a case like that. As long as they're able to get some connection between that criminal activity and the location, then yeah, in a case like that, they could get it. How do you respond to the facts about the Snapchat of the guns? Yeah. The Snapchat of the guns is the best fact that the government has on either the Fourth Amendment issue here or the good faith issue here. But again, what that might get you is a reasonable inference that he's using the phone, not a camera. But even then, the government is asking for 90 days across all apps. What about a warrant that's targeted to app you know that the person's using? It's kind of an issue of occupancy as is mentioned in this warrant at some point. And from there, you build the case out because once you run the Cellbrite on the Snapchat application, you're going to learn a lot about what the preferences are on that app. What are the settings? What's the cross-pollination with other apps? Who's the person communicating with? You'll get the contact information from the other side of that chat or communication. And from there, you build the case out instead of saying, I got one picture. Let's go for 90 days of everything. Is that a particularity argument? I see the blending. I get it. But no, it's a nexus argument really because of how special phones are. When talking about where, it's easy to think of the limiting principle as the physical phone itself. What about, I mean, your client at some point says the evidence that exonerates me is on my phone. What sort of limiting principle do you have there? Another strong fact for the government, I agree, but it doesn't get them into the phone because the government's conflating the Fourth Amendment with 403. Relevance and inculpatory evidence are different. Somebody saying, look, that phone clears me is not saying, it's not a confession. It's not an access point into the phone. The warrant doesn't have to seek evidence that he committed a crime necessarily. It was evidence of a crime. So if he says, exculpatory, maybe at least one sound inference is, it's exculpatory to somebody else, right? And so you can get a warrant to search. Again, everything, but here, the nexus has to then go to what they're looking for as to say, I think this is the October, the events in October. We've got a nexus that stretches two months prior and a bit past that, and it's looking at call logs. It's looking at banking information, information that really has no connection to this event, this discrete event at a location in Pontiac in October. Another way to think about the issue with the, another way to think about nexus in a case like this, where you've just got an arrest warrant. We're looking at an arrest warrant. There's all good facts here about somebody who's involved or potentially involved in criminal activity. And from there, the government says, let's dig. The fraud allegations, they occur in 2020, 2021. We know there's an email address, Miles DeShawn. We know there's an AT&T IP address that the agent believes is tied to a home in the Detroit area. Nothing as to Jamil Tanzil tied to the email, nothing as to Jamil Tanzil tied to the address. And we're looking for communications. Well, I shouldn't say that. We're looking for everything years after the filing of the fraud complaints or the fraud, the alleged fraud fraudulent applications to the insurance systems. Where's the nexus there? If it's events occurring in 2021, why are we in 23 in August? There's no connection. So when you look at digital data, you're looking at something different than a home. You're looking at a way of saying this phone is instrumentality of crime used in the crime. And here's how we know that the facts are the inferences that come from it. I wanted to ask about the district court's ruling on good faith. Um, it's pretty, pretty short on the good faith part. And so tell us, you know, give us your best case to demonstrate there was no minimally sufficient nexus here. Best case on minimally, minimally sufficient nexus, it's a bit of a stumble, minimally sufficient nexus is Meriwether and the citations to the two cases from many years ago involving, I think, prohibition or illegal liquor investigations, where essentially when you've got somebody who you can tie to criminal activity and the officer says, I've got a hunch here. I've got, I've got a reason to think, just trust me on this. We're going to find something on the phone or we're going to find something in this location. I think that was where it was in the Aguilar and Nathanson cases. It was a particular location. There's got to be something more than that assumption that I kind of know what I'm doing. I've done these investigations enough and I've seen enough of these. We're going to find something. It's, it's the modern version of that. When an officer says the phones are everywhere. I agree. They're ubiquitous. We all have them, but then you're, you're not only, I think, collapsing, uh, any distinction between good faith and the rule in that way, the exception swallows the rule. You're also limiting what the fourth amendment means. Anytime Silicon Valley comes up with a new way to categorize or collect all of our data on a device, the fourth amendment doesn't get written a new every time there's a technological development that captures all corners of our personal life and whatever else. So there's, there's no real good cases is the truth of it. But the Nathanson case, the Aguilar case give the logic that speaks to the problem here. And another, another way at that question judge is at some point when, and I see the, the many applications of the minimally sufficient nexus, uh, uh, language to the cell phone searches at some point, the exception does swallow the rule because as it's so easy to go back and look at the limiting principle in the nexus area as the phone, because all of the nexus cases originate in home searches and there, the, the place, it jumps right at you. We know the limit, it's the four walls, the basement, the rooms. It's, it's easy to limit it, but a phone just, it's different. It's, it's, I am drawn to the language in Riley that there's a horse and buggy and space shuttle. When you think about container cell phone, there's a similarity. I think, especially as these cell phones get more and more like computers, there is a similarity between even a home search and a phone search. And, and that's where I go. The limiting principle in these warrants can't be the physical phone because at that point, once you get person, crime, phone, there really is no warrant requirement. It's, or I shouldn't say it that way. The warrant requirement doesn't match its purposes. The warrant's not just a piece of paper in a court file. It's supposed to cabin officer discretion. It's, it's supposed to guide the search. But if, if here, and this is I think a good example of where the warrant doesn't do that, if they're really looking for fraud from 2020 and 21, why are they limiting themselves to the communications in 23? The location, the nexus when it comes to cell phones speaks to data. It speaks to applications. And the ways that the government has to parse out the app data and see what they've got, see cross-pollination, is real. It's not obstructing an investigation. It's simply saying, and this I think is the Fourth Amendment principle at play, facts justify a search, or a search follows the facts that justify it. And here, for the government to get at 90 days of, of, of application data, they need more than a photo and they need more than a statement that would speak to just relevance generally. The warrant isn't tied, the warrant may be, Judge Ritz, back to your question, to investigate generally this, this incident and, and to determine who may be involved. But it's, it's as to Jamil Tanzil that they're going in and looking at his phone. And they need more than what they have here. The, unless this court has further questions, I think the district court got this right, we'd ask that you affirm. Thank you. Thank you, Counsel, for your rebuttal. Thank you, Your Honor. I want to turn back to something that Mr. Monahan said about good faith. And Your Honor asked him, what is his best case? And he cited Merriweather. Well, in Merriweather, the court found that the good faith exception applied despite the fact that the affidavit provided no tie between the defendant's cell phone and criminal activity at all, just based on the fact that he was participating in drug sales and his confederate used a cell phone. Here, the affidavit is far better, better than Merriweather where the court found good faith because it directly ties Tanzil's cell phone to evidence of his criminal activities. And if this finds good faith, it does not need to delve into the overbreadth question that the district court also did not rule on. But... Since we haven't picked a standard, is it good faith to just assume that the lower standard is the standard for Nexus? I think yes, Your Honor. And I think in rolling, it's an unpublished decision, but the court said that given the uncertainty in the phone context, that certainly, that plays into the good faith analysis because we can't expect agents who are not lawyers who have a harder time drawing these distinctions to understand them when there isn't even a clear standard. And just to follow up on that, something I'm thinking about too, counsel, is if it's, you know, when is there going to be a case you have a better good faith argument than you do a PC argument? You're always going to have a better good faith argument to the lower standard. When is the case that will force us to make a decision on the PC standard in this context? Your Honor, I can't say when that case would be. I mean, I think there's certainly enough here for the court to find that there was probable cause, but there may be a case where there is nothing at all tying the phone to criminal activity, but that is not this case. You said that we wouldn't have to weigh in on overbreadth if we found good faith. We would also not have to weigh in on probable cause either. That's correct, Your Honor. Unless there are further questions, we ask this court to reverse the district court's order suppressing evidence. Thank you. Okay, thank you, counsel. Thank you both for your briefs and your arguments. The case will be submitted.